UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Alfredo Torrijos | Laurence Pulgram |

**Proceedings:** **Defendants' Motion to Dismiss** (filed 9/29/08)

## I.  INTRODUCTION

The facts of this action are known to the parties and set forth in the Court's July 31, 2008 order granting defendants' motion for summary judgment and denying defendants' motion to dismiss.

On May 27, 2008, plaintiff Tom Lambotte ("Lambotte"), on behalf of himself and all others similarly situated, filed the instant class action suit in the Los Angeles County Superior Court against defendants IAC/Interactive Corp., Ticketmaster, d/b/a Citysearch.com, Citysearch.com (collectively, "Citysearch"), and Does 1-20.  On June 27, 2008, Citysearch removed the action to this Court.  The class action complaint asserted claims for breach of contract, violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., and negligence.  The gravamen of the complaint was that Lambotte entered into a contract with Citysearch to place "pay-per-click" advertisements on the Citysearch website, and that Citysearch failed to detect and prevent "click fraud."[1]

On July 7, 2008, Citysearch filed a motion seeking summary judgment on Lambotte's first and second claims for relief.  On July 31, 2008, the Court granted Citysearch's motion for summary judgment on Lambotte's claims for breach of contract and injunctive relief under the UCL. The Court granted Lambotte 30 days to add former

---

[1] The complaint explained that the term "click fraud" is colloquially understood in the industry to describe "purposeful clicks on advertisements by someone other than a potential customer."  Complaint ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

customers to his complaint who were not subject to the defense raised by Citysearch in its motion for summary judgment.[2]

On September 3, 2008, plaintiff filed a first amended complaint ("FAC"), in which he added two additional named plaintiffs: Chad Bordeaux ("Bordeaux") and Sarah Bloch ("Bloch"). In the FAC, plaintiffs assert claims for breach of contract and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq..

Citysearch filed the instant motion to dismiss plaintiffs' breach of contract claim on September 29, 2008. Plaintiffs filed an opposition on October 17, 2008. On October 17, 2008, plaintiffs also filed a request for judicial notice. Citysearch filed a reply on October 27, 2008. A hearing was held on November 3, 2008. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. FACTUAL BACKGROUND

Plaintiffs allege that Citysearch provides, among other things, online advertising services, which generate most of Citysearch's revenue. FAC ¶ 16. Such advertising services may be purchased for a flat monthly fee or on a pay-per-click basis. FAC ¶ 17. If a customer chooses the pay-per-click advertising option, Citysearch charges the customer only when a user clicks on the customer's advertisement. FAC ¶ 18.

Plaintiffs allege that on December 10, 2007, Lambotte entered into a written form contract for the placement of pay-per-click advertising on Citysearch.com.[3] FAC ¶ 36.

---

[2] The Court granted summary judgment for Citysearch on the breach of contract claim because, at the time of the motion, Citysearch had refunded all of the advertising fees that Lambotte had paid to Citysearch, and, under the express terms of the contract at issue, Lambotte was only entitled to recover fees actually paid to Citysearch.

[3] The Agreement describes the pay-per-click performance package as follows

> The Performance Package is Citysearch's pay for performance advertising program where businesses set a monthly advertising budget (the "CAP") and pay for Click-Throughs or Program Calls (defined below) up to the CAP. On a monthly basis, Business shall pay to Citysearch a monthly listing fee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

Plaintiffs allege that on December 22, 2007, Lambotte, after having received a sudden and unexplained influx of clicks on his advertisement over a period of five days, emailed Citysearch requesting that Citysearch cancel his account. FAC ¶ 36-37. Plaintiffs allege that Lambotte also contested the charges for these clicks and requested that they be reversed, but that Citysearch refused. FAC ¶ 38.

Plaintiffs allege that in March 2008, Bordeaux entered into the same written form contract for the placement of pay-per-click advertising on Citysearch.com. FAC ¶ 39. Plaintiffs allege that shortly thereafter, Bordeaux suspected click fraud and requested that the charges he incurred be reversed, and that Citysearch refused. FAC ¶ 40. Plaintiffs allege that Bordeaux cancelled his account in August 2008, at the end of his contractual obligation, after paying over $700 in fees to Citysearch. FAC ¶ 41.

Plaintiffs allege that in January 2008, Bloch entered into the same written form contract for the placement of pay-per-click advertising on Citysearch.com. FAC ¶ 42. Plaintiffs allege that after having received no new clients after the first billing cycle, Bloch requested a refund, but that Citysearch refused to refund the majority of the fees. FAC ¶ 43. Plaintiffs allege that over a three month period, Bloch paid $1,900 in fees without receiving any new customers. FAC ¶ 44.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

---

and the cost per click and/or cost per call for each Click-Through and/or for each Program Call, up to the CAP set forth on the Enrollment Form.

FAC, Ex. A (plaintiff's contract) ¶ 3a.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**III. DISCUSSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

In their FAC, plaintiffs allege that they each entered into the written form contract (the "Agreement") for the placement of pay-per-click advertising on Citysearch.com, and that the Agreement contained an implied covenant of good faith and fair dealing "that Citysearch would not do anything that would have the effect of injuring the rights of Plaintiffs and the Class to receive the benefit of the contract." FAC ¶ 58. Plaintiffs allege that Citysearch breached both the express terms of the Agreement and its covenant of good faith and fair dealing

> by collecting fees from plaintiffs and the Class for click fraud even though Citysearch knew, or should have reasonably known, that the clicks were not 'actual clicks' but rather purposeful clicks made for an improper purpose. Citysearch further breached its contract with Plaintiffs and the Class by failing to implement effective oversight, investigating oversight and prevention of click fraud. FAC ¶ 59.

Citysearch argues that plaintiffs have failed to state a claim for breach of contract, and that therefore this claim must be dismissed.

### A. Breach of Express Terms of the Agreement

Citysearch alleges that plaintiffs cannot state a claim for relief, because plaintiffs in their FAC fail to identify any provision of the Agreement between plaintiffs and Citysearch that Citysearch has breached. Mot. at 7-8. Citysearch argues that the governing Agreement imposes no duty on Citysearch to prevent "invalid" clicks (also referred to as "fraudulent" clicks), nor does it state that plaintiffs would be charged only for valid clicks. Mot. at 7. Instead, Citysearch argues, the Agreement states that "Citysearch's Services are provided on an as-is basis." Mot. at 9. Furthermore, Citysearch argues, the Agreement states that "Citysearch disclaims all warranties and guarantees regarding . . . the quality or timing of click-throughs, click through rates, conversions or other performance or results for any advertising." Mot. at 10. Therefore, Citysearch argues, the Agreement is clear that Citysearch has no obligation to detect or prevent click fraud. Mot. at 10.

Plaintiffs, however, argue that Citysearch did breach the express terms of the contract when it charged plaintiffs for clicks not generated by "users." Opp'n at 6. The express terms of the Agreement provide that "click-throughs," for which advertisers are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

charged, are defined as:

> (i) clicks on Business' advertising located on the Citysearch website or a Citysearch distribution partner website, which directs users to Business' website or Business' profile page on the Citysearch website, (ii) clicks directing users to Citysearch partner web pages containing Business' enhanced content, or (iii) clicks on certain content links located on Business' Citysearch profile page. Opp'n at 7, citing FAC Ex. A.

Plaintiffs argue that the clear interpretation of the term "user" in the Agreement is "potential client." Opp'n at 7. To support this construction, plaintiffs cite Citysearch's "About Us" page, on which Citysearch states, "We connect you to more customers. You only pay for results. Advertise on Citysearch today and only pay for clicks to your Website or business profile page." Opp'n at 8; see FAC ¶ 23. Plaintiffs argues that, based on these representations, a reasonable person would interpret the term "user" in the Agreement to require payment only for clicks made by "potential clients," and not for clicks made by "automated systems, vindictive competitors, or Citysearch employees." Opp'n at 8. Therefore, plaintiffs argue, by charging plaintiffs for "fraudulent clicks" – that is, clicks made by those other than "potential clients" – Citysearch breached the Agreement. Opp'n at 10.

      Citysearch, however, argues that plaintiffs' interpretation of the term "user" makes no commercial sense, as it would require Citysearch to determine "whether each and every click on Plaintiffs' ads was by a user who was genuinely interested in Plaintiffs' goods and services." Reply at 1.[4] Citysearch further argues that plaintiffs' interpretation is inconsistent with the Agreement's explicit disclaimer, which states that "Citysearch's Services are provided on an as-is basis" and that "Citysearch disclaims all warranties and

---

[4] At oral argument, Citysearch reiterated this argument, stating that interpreting the contract in this way would render the contract unperformable. Citysearch also asserted that plaintiffs' interpretation is inconsistent with Citysearch's Invalid Click Policy, located on the Citysearch website, which states, "While we endeavor to charge customers solely for valid clicks, we cannot ensure that all invalid clicks will be detected." FAC Ex. D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

guarantees regarding . . . the quality or timing of click-throughs, click through rates, conversions or other performance or results for any advertising." Mot at 9; Reply at 6.

    Plaintiffs counter that their interpretation does not conflict with the Agreement's disclaimer, because the disclaimer is ambiguous and could reasonably be interpreted as stating only that Citysearch does not guarantee that advertisements will provoke consumer interest in the advertiser's business. Opp'n at 17. Plaintiffs argue that this interpretation is supported by the fact that the disclaimer speaks to the quality of clicks generated by "users" and that, likewise, "click-through" is defined in the Agreement as referring to clicks by "users." Opp'n at 18. Because plaintiffs interpret "user" to mean "potential client," plaintiffs' interpretation would render the disclaimer applicable only to clicks by potential clients and not to fraudulent clicks. Citysearch, however, argues that such an interpretation would be redundant, because the last sentence of the disclaimer refers to "results for any advertising," so that "if the entire disclaimer related only to 'results,' the language disclaiming any guarantee as to 'the quality or timing of click throughs' would be superfluous." Reply at 6.

    The Court recognizes that plaintiffs' interpretations of the term "user" and of the disclaimer may not be the most reasonable interpretations. However, it appears to be at least conceivable that, in stating that plaintiffs' would be charged for clicks by "users," the Agreement could be interpreted as not requiring payment for certain types of clicks, such as those made by automated systems, vindictive competitors, or Citysearch employees. The Court recognizes that Citysearch may be correct that interpreting the term "user" as "potential client" could impose a requirement that Citysearch be aware of the subjective intent of all parties that click on advertisements on the Citysearch website, which could, in turn, render the Agreement unperformable. However, the Court finds that this determination is best left for a motion for summary judgment, after plaintiffs have had the opportunity to proffer any additional evidence they may obtain supporting their interpretation of the term "user."

    Furthermore, although Citysearch stated at oral argument that the language of the Invalid Click Policy contradicts plaintiffs' interpretation, because it states that Citysearch "cannot ensure that all invalid clicks will be detected" by Citysearch, this argument does not, in itself, necessarily defeat plaintiffs' interpretation, because subsequent language in the Policy requests that advertisers contact Citysearch Customer Service if they "have any questions or concerns about clicks charged to [their] account," stating that "a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

customer service specialist will investigate [the] account." See FAC Ex. D. Therefore, the Invalid Click Policy could plausibly be interpreted to support plaintiffs' interpretation that customers would not be charged for certain clicks.

Given that plaintiffs have sufficiently alleged that terms in the agreement are ambiguous, the Court is required under California law to consider extrinsic evidence regarding the possible ambiguity. See Trident Ctr. v. Connecticut Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir. 1988). As the Ninth Circuit has stated, under the standard set forth by the California Supreme Court in Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 641 (1968)

> it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.

Trident Ctr. v. Connecticut Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir. 1988).

Plaintiffs argue that, because the Court must consider extrinsic evidence regarding the alleged ambiguity, dismissal based on the pleadings is inappropriate. A. Kemp Fisheries Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 497 n.2 (9th Cir. 1988) ("Trident held only that courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous. The case must proceed beyond the pleadings so that the court may consider the evidence"). Citysearch counters that here, unlike in Trident and in A. Kemp Fisheries, all of the extrinsic evidence that plaintiffs reference is already before the Court, and that, therefore, the Court may resolve any alleged ambiguity at this stage. Reply at 10; see id; 847 F.2d at 569. However, at oral argument, plaintiffs stated that they intend to introduce additional extrinsic evidence beyond that which was already submitted to support their interpretation. As a result, the Court finds dismissal at this juncture to be inappropriate. As Trident noted, Pacific Gas does not prevent a party from moving for summary judgment after completion of discovery on the issue of the proper interpretation of contractual terms. See 847 F.2d at 569 n.6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

  Furthermore, although Citysearch argues that this Court's decision in Checkmate Strategic Group v. Yahoo!, Inc., No. CV 05-4588 CAS, Slip Op. (C.D. Cal. Oct. 14, 2005) supports its position, this case is not dispositive. Mot. at 8. In Checkmate, this Court dismissed a breach of contract claim alleging that defendant Yahoo! wrongfully charged plaintiff for clicks on plaintiff's advertisements that were the result of click fraud. The Court concluded that the term "click" in the contract unambiguously required customers to pay for all clicks, including allegedly fraudulent clicks. In the instant action, by contrast, plaintiffs have sufficiently alleged that the term "user" is ambiguous, such that, if plaintiffs' interpretation were correct, plaintiffs would no be responsible for paying for fraudulent clicks.

  Furthermore, the Court's subsequent decision in the same case is instructive. Opp'n at 11. In Checkmate Strategic Group v. Yahoo!, Inc., No. CV 05-4588 CAS, Slip Op. (C.D. Cal. Dec. 19, 2005), the Court declined to dismiss the breach of contract claim in plaintiff's first amended complaint, holding that "in light of the liberal notice pleading standard of the Federal Rules, plaintiff has sufficiently pled a claim for breach of contract."[5] The Court found that although the contract required payment for "all clicks," it also provided that billing would be calculated in accordance with "Overture's Marketplace rules." Because the term "Overture's Marketplace rules" was ambiguous, and could plausibly be read, as plaintiff alleged, as referring to a portion of the Yahoo! website that stated that Yahoo! advertisers would not be charged for fraudulent clicks, dismissal of plaintiff's complaint was inappropriate. Similarly, because the term "users" in the Agreement could plausibly refer to "potential clients," as plaintiffs allege, dismissal in the instant action at this juncture is inappropriate.

  **B.  Breach of Covenant of Good Faith and Fair Dealing**

---

  [5] Plaintiffs filed with their opposition a request that the Court take judicial notice of three documents: the Court's October 14, 2005 and December 19, 2005 orders in Checkmate Strategic Group v. Yahoo!, Inc., No. CV 05-4588 CAS (FMOx) and the Court's October 30, 2006 Order in In re Yahoo! Litigation, No. CV 06-2737 CAS. Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986). As such, judicial notice is proper insofar as judicial notice is taken that these three orders were issued.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

  In their FAC, plaintiffs claim that Citysearch breached the covenant of good faith and fair dealing by collecting fees for fraudulent clicks and by failing to prevent click fraud. Citysearch argues that this claim is deficient, because, under California law, "the covenant of good faith and fair dealing cannot impose substantive terms and conditions beyond those to which the parties actually agreed." Mot. at 8, citing Guz v. Bechtel Nat'l, Inc. 24 Cal. 4th 317, 349 (2000) ("the covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. . . It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.") (emphasis in original). Citysearch argues that plaintiffs are essentially trying to place a duty on Citysearch to do a reasonable or effective job at preventing click fraud, when such a duty would be inconsistent with the Agreement's disclaimer. Mot at 9. However, as explained herein, because plaintiffs have sufficiently alleged that the disclaimer could plausibly be interpreted as stating only that Citysearch does not guarantee that advertisements will provoke consumer interest in the advertiser's business, the disclaimer does not unambiguously conflict with plaintiffs' breach of covenant of good faith and fair dealing claim. See Opp'n at 17.

  In addition, plaintiffs allege that Citysearch's interpretation of the disclaimer is directly contradicted by representations made by Citysearch in its Invalid Click Policy. Opp'n at 18. Plaintiffs allege that the Citysearch Invalid Click Policy states that "one of Citysearch's key concerns is detection of invalid clicks" and that Citysearch "develops processes, policies and technologies to identify invalid click activity with regard to our customers' advertising." Opp'n at 19; FAC Ex. D. The Invalid Click Policy also explains how Citysearch monitors invalid clicks and what kind of clicks Citysearch can detect and remove. FAC Ex. D. In addition, it states, "While we endeavor to charge customers solely for valid clicks, we cannot ensure that all invalid clicks will be detected." FAC Ex. D. The Policy states the advertisers having concerns about invalid clicks charged to their account may contact Citysearch, and a customer service specialist will investigate. FAC Ex. D. This extrinsic evidence, plaintiffs argue, indicates that the disclaimer should not be interpreted as limiting Citysearch's liability with regard to charges for fraudulent clicks.

  As a result, plaintiffs argue, the allegations in their FAC regarding the covenant of good faith and fair dealing – namely, that Citysearch is in a unique position to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

whether a click is invalid, that Citysearch affirmatively represents to their customers that they attempt to prevent fraudulent clicks, and that Citysearch collected fees that they should have reasonably known were generated by fraudulent clicks – do not conflict with the express terms of the contract and are sufficient to state a claim. Opp'n at 15. Plaintiffs cite this Court's decision in In re Yahoo! Litigation, No. CV 06-2737 CAS (C.D. Cal. Oct. 30, 2006), in which the Court held that, given the liberal pleading standard under the Federal Rules of Civil Procedure, where plaintiff's claim for breach of the covenant of good faith and fair dealing did not necessarily conflict with the express terms of the contract, dismissal was inappropriate. Here, as in In re Yahoo!, the Court finds that plaintiffs' has sufficiently alleged a breach of the covenant of good faith and fair dealing which does not necessarily conflict with the express terms of the contract, and that, therefore, dismissal is therefore inappropriate.

      **C.**     **Sufficiency of Factual Allegations**

Finally, Citysearch argues that plaintiffs fail to plead a single fact to support their claim that clicks for which they were charged were invalid, and instead only state that they suspected the clicks were invalid. Mot. at 10. Citysearch also argues that the claim that Citysearch did nothing to prevent click fraud is contradicted by plaintiffs' statements in the complaint that Citysearch in fact employs sophisticated methods of detecting click fraud. Mot. at 10; See FAC ¶¶ 24-25, 29 (citing Citysearch's Invalid Click Policy). Citysearch argues that, therefore, plaintiffs' claim fails under Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007), because plaintiffs have failed to "nudge their claims across the line from conceivable to plausible."

However, the Court finds that plaintiffs have met their burden under Twombly. In their FAC, plaintiffs have alleged that they paid for advertisements on Citysearch for which they received no results, that Citysearch refused to refund at least some charges for the clicks that plaintiffs suspected were fraudulent, and that Citysearch failed to prevent click fraud and created an environment which fosters click fraud. Therefore, it is at least plausible that some of the fees charged to plaintiffs were the result of fraudulent clicks. Opp'n at 21; see Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008) (complaint must "plead enough facts to state a claim for relief that is plausible on its face"). Furthermore, plaintiffs' allegations that Citysearch failed to prevent click fraud are not inconsistent with plaintiffs' allegations regarding Citysearch's Invalid Click Policy, because the allegations appear to be presented to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-04263 CAS | Date | November 4, 2008 |
|---|---|---|---|
| Title | Tom Lambotte, et al. v. IAC/InterActiveCorp., et al. | | |

demonstrate Citysearch's *representations* regarding how it deals with fraudulent clicks, rather than the actions that Citysearch actually took in the instant case.

### D. Lambotte's Claim

In its reply, Citysearch requests that the Court specifically dismiss plaintiffs' breach of contract claim as to Lambotte, because the Court previously granted summary judgment against Lambotte. Reply at 14; see July 7, 2008 Order Granting Summary Judgment. At oral argument, plaintiffs clarified that they did not intend to plead the breach of contract claim as to Lambotte, given that the Court has already granted summary judgment against him on that claim. However, plaintiffs intend to maintain Lambotte as a named plaintiff on the UCL claim.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Citysearch's motion to dismiss, except insofar as it seeks dismissal of Lambotte as a plaintiff on the breach of contract claim.

IT IS SO ORDERED

|  |  | 00 | : | 21 |
|---|---|---|---|---|
|  | Initials of Preparer |  | CMJ |  |